**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TERRIE LOPEZ ROSS, | ) Case No.: 1:15-cv-01322-BAM |
| Plaintiff, | ) |
| v. | ) **ORDER REGARDING PLAINTIFF'S** |
| | ) **SOCIAL SECURITY COMPLAINT** |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**INTRODUCTION**

Plaintiff Terrie Lopez Ross ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this action.

[2] The parties have consented to the jurisdiction of the United States Magistrate Judge for all proceedings in this case, including entry of final judgment. (Docs. 7, 8).

1

Having carefully considered the parties' briefs as well as the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed her applications for disability insurance benefits on March 6, 2012, and her application for supplemental security income on March 8, 2012. AR 209-10, 211-18.[3] Plaintiff alleged that she became disabled on April 10, 2008. AR 209, 211. Plaintiff's applications were denied initially and on reconsideration. AR 147-52, 158-63. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ John Cusker held a hearing on January 10, 2014, and issued an order denying benefits on March 27, 2014. AR 9-23, 28-59. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-3, 5-8. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on January 10, 2014, in Fresno, California. AR 28-59. Plaintiff appeared and was represented by attorney Melissa Proudian. AR 30. Impartial Vocational Expert Stephen Schmidt also appeared and testified. AR 30, 53-58.

At the time of the hearing, Plaintiff was 56 years old. In response to questions from the ALJ, Plaintiff testified that she has a driver's license and is able to drive. She has a GED, is certified as a CNA and has post-high school education or certification as a massage therapist. She has not worked since April 10, 2008, and she last worked two full-time jobs, one at Fresno Community as a patient care assistant and one as a CNA at a nursing home, but then dropped to just one job at the hospital. AR 32-34.

When asked about her limitations, Plaintiff testified that she takes medications for high blood pressure. She has palpitations and dizziness, which causes her to lie down for 45 minutes to one hour.

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

Plaintiff also takes medications for underactive thyroid, which causes palpitations and confusion, and for high cholesterol. Plaintiff takes over-the-counter Ibuprofen for pain. AR 35.

Plaintiff's treating physician is Irma Castro, and Plaintiff confirmed that she went approximately 16 months without seeing her doctor. Plaintiff testified that she lost her health insurance in October or November 2012, and she has to pay out-of-pocket. AR 35-37.

When asked about her daily activities, Plaintiff testified that she is able to dress and bathe herself without help. She prepares meals, does her own laundry once a week and shops with her son. She does some housework, including vacuuming, sweeping and dusting, but has to take a break after 30 minutes because of her back. Plaintiff also spends about three hours total each day sewing, but needs a break every 20 minutes because it hurts her neck and back. When she tries to get up and walk, it affects her hip and she has to grab her cane. Although she did not walk into the hearing with a cane, Plaintiff explained that she has to have it handy when doing housework and has to use the majority of the time. In response to questions about her limitations, Plaintiff testified that she can walk maybe half a block. AR 37-44. She can bend a little bit, but cannot squat or sit for two hours at a time. She can lift about 10 to 15 pounds. AR 45.

In response to questions from her attorney, Plaintiff testified that the pain in her back starts from her neck and goes to her lower back, mainly in her hip area. She also has numbness in her left calf and spasms in her left knee. The numbness in her calf happens whenever she stands for thirty minutes. The spasms in her knee happen throughout the day and last no more than three minutes at a time. AR 47-50.

Plaintiff also testified that she lies down at least three to four times a day, every day, between 45 minutes to an hour. In addition to doing housework, Plaintiff tries to sweep and wash off the porch and back patio once a month. AR 50-51.

When asked about her ability to concentrate, Plaintiff testified that the longest she could focus or keep attention on something would be an hour before needing a 20 minute break. Plaintiff has had treatment for depression or anxiety. Her doctor prescribed medication in 2006 or 2007, but Plaintiff did not like the effects and stopped taking it after five days. Plaintiff also had counseling through her job when she was on the verge of losing her home. AR 51-52.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Stephen Schmidt. The VE testified that Plaintiff's past work was classified as nurse assistant. The ALJ then asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to consider an individual with the same age, education and previous work experience as Plaintiff. This individual can lift and carry 50 pounds occasionally, 25 pounds frequently, can stand and walk six hours out of an eight workday with normal breaks and can sit for six hours. She does not require an assistive device and does not have any postural, manipulative, visual or communicative limitations. In addition to the physical limitations, this individual also can carry out simple and some detailed instructions and can sustain concentration, persistence and pace for simple and some detailed work-related tasks over the course of a 40-hour work week. Due to lack of clarification regarding detailed instructions, the ALJ concluded that this individual had no capacity for past relevant work. However, the VE testified that there would be other jobs that such an individual could perform, such as cleaner-industrial, kitchen helper and hand packer. AR 53-55.

For the second hypothetical, the ALJ asked the VE to consider an individual with the same physical limitations who can maintain attention and concentration to carry out simple job tasks and can relate and interact with coworkers, supervisors and the general public, but cannot carry out an extensive variety of technical and/or complex instructions. The VE testified that an individual with those limitations could perform the jobs identified in the answer to the first hypothetical. AR 55-56.

For the third hypothetical, the ALJ asked the VE to consider an individual with the same physical limitations. This individual also has unlimited capacity for understanding, remembering and carrying out simple one or two-step instructions, along with a moderate limitation of ability to understand, remember and carry out complex instructions and moderate limitation of ability to relate and interact appropriately with the public, coworkers and supervisors. This individual also has marked limitation of ability to maintain adequate concentration, persistence and pace, marked limitation of ability associated with common work activity including attendance and safety. This individual has no limitations with regard to accepting instructions from supervisors, but has marked limitations with regard to ability to maintain regular attendance and perform work activities consistently and has moderate limitation with regard to performing work activities without special or additional

supervision. The VE testified that this individual could not perform any jobs in the national economy. AR 56-57.

For the fourth hypothetical, Plaintiff's counsel asked the VE to consider an individual with the same vocational factors as Plaintiff, who could sit a maximum of two hours, stand and walk a maximum of two hours, could occasionally lift less than 10 pounds, occasionally lift 10 pounds, rarely lift 20 pounds, could rarely twist, stoop or bend, could never crouch or squat, and could occasionally climb stairs, but never climb ladders. This individual would sometimes need to take an unscheduled break during a workday for 20 to 30 minutes, would occasionally need a cane for standing and walking due to imbalance and/or pain. This individual would be off task approximately 5 percent of the workday in terms of attention and concentration, would only be capable of low stress work with not a lot of physical demands and would possibly be absent from work approximately three days per month. The VE testified that this person could not perform Plaintiff's past work or any other work. AR 57-58.

For the fifth hypothetical, Plaintiff's counsel asked the VE to consider an individual with the same elements of the first hypothetical, but this individual would need an additional rest break of approximately one hour per day and could do activities in increments of approximately 30 minutes on task with a break of 15 to 20 minutes off task. The VE testified that there would not be any work for this individual. AR 58.

**Medical Record**

The entire medical record was reviewed by the Court. AR 296-453. The relevant medical evidence is referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled. AR 12-23. More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 10, 2008, her alleged onset date. AR 14. Further, the ALJ identified obesity, hypertension, hypothyroidism and arthralgias as severe impairments. AR 14-17. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments. AR 17.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work. Plaintiff could lift and carry up to 50 pounds occasionally and 25 pounds frequently, could stand and/or walk up to six hours and sit for six hours in an eight-hour workday. She could maintain the attention and concentration in order to perform simple jobs, and could relate to, and interact with, coworkers, supervisors and the general public. AR 17-21. The ALJ found that Plaintiff could not perform any of her past relevant work, but there were jobs existing in significant numbers in the national economy that she could perform. AR 22-23. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act from April 10, 2010, through the date of decision. AR 23.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §

1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[4]

Plaintiff argues that the ALJ committed reversible error by (1) failing to provide an adequate basis for ignoring the opinions of her treating and examining physicians; (2) impermissibly dismissing Plaintiff's pain testimony; and (3) dismissing the lay testimony of her son and her fiancé.

### I. The ALJ Did Not Err in Rejecting the Opinion of Plaintiff's Treating Physician

Plaintiff first argues that the ALJ erred by discounting the opinion of her treating physician, Dr. Castro. Specifically, Plaintiff contends that the ALJ's reasons for discounting Dr. Castro's opinion regarding Plaintiff's mental and physical limitations are faulty and incorrect. The Commissioner counters that the ALJ properly discounted the contradicted opinion of Dr. Castro as inconsistent with her treatment record, poorly explained, contradictory to the weight of the evidence, and based wholly on Plaintiff's discounted subjective complaints. (Doc. 15 at 11).

**A. Legal Standard**

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating physician's opinion is not contradicted by another doctor, the

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830–31. The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a physician—even a treating physician—if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871, 874-75 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-601 (9th Cir. 1999).

**B. The ALJ Provided Specific and Legitimate Reasons for Discounting Dr. Castro's Opinions**

1. Mental Limitations

On December 12, 2013, Plaintiff visited Dr. Castro for disability forms. It was noted that Plaintiff had "not been seen for a long time." A review of Plaintiff's psychiatric/behavioral systems was negative, including negative for depression and suicidal ideas, but she was occasionally tearful and appeared depressed. However, she was not diagnosed with any mental impairment. AR 383-84.

Following examination, Dr. Castro completed a Mental Residual Functional Capacity Questionnaire. Dr. Castro did not identify a mental health diagnosis, but opined that Plaintiff's mental abilities in understanding and memory would be impaired for 5% of an 8-hour workday in the

following areas:  (1) understand and remember very short and simple instructions; and (2) understand and remember detailed instructions.   Plaintiff's mental abilities in sustained concentration and memory would be impaired for 5% of an 8-hour workday in the following areas:  (1) carry out very short and simple instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods of time; (4) perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances; (5) sustain an ordinary routine without special supervision; (6) work in coordination with or in proximity to others without being distracted by them; (7) make simple work-related decisions; and (8) complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.  Plaintiff's social interaction would be impaired for 5% of an 8-hour workday in the following areas:  (1) interact appropriately with the general public; (2) ask simple questions or request assistance; (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (4) maintain socially appropriate behavior, and to adhere to basic standards of neatness and cleanliness.  In adaptation, Plaintiff would be impaired for 5% of an 8-hour workday in the following areas:  (1) respond appropriately to changes in the work setting; (2) be aware of normal hazards and take appropriate precautions; (3) travel in unfamiliar places or use public transportation; and (4) set realistic goals or make plans independently of others.  Dr. Castro further opined that Plaintiff likely would be absent from work as a result of her impairments 1 day per month and would be unable to complete an 8-hour workday approximately 3 days per month.  AR 370-372.

The ALJ assigned Dr. Castro's Mental Capacity Assessment "little weight."  AR 15.  In so doing, the ALJ provided specific and legitimate reasons for rejecting Dr. Castro's opinion.  As one reason, the ALJ discounted Dr. Castro's opinion because she did not provide an explanation to support the responses on the check-box form and her treatment notes did not contain mental status examination findings or reports of other objective findings relevant to Plaintiff's mental capacity.  AR 17.  Generally, even if a treating physician's "assessments are of the 'check-box' form and contain almost no detail or explanation," they should not be dismissed unless the record fails to support the physician's opinion.  *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (assessment in check-

box form supported by record because it was consistent both with claimant's testimony and the doctor's own treatment notes). In this case, the ALJ properly discounted Dr. Castro's check-box form because it was not supported by her own treatment notes. At the time of the opinion, Dr. Castro had not provided treatment to Plaintiff "for a long time," and the corresponding treatment notes indicated that Plaintiff's psychiatric/behavioral systems were negative, although she was occasionally tearful and appeared depressed. As a result of the examination, Dr. Castro did not diagnosis Plaintiff with depression or any other mental impairment. AR 16, 383-84. Further, Dr. Castro's other treatment notes did not include mental status findings corroborating the assessed limitations. AR 296-97, 394-95, 404-05, 413-14, 425, 432-33, 438-39, 440-47.

As another reason for discounting Dr. Castro's mental limitations, the ALJ found that no other treating source had reported significant psychiatric symptoms, and the treatment notes did not contain any grossly abnormal findings on mental status examination. AR 16. Although Plaintiff faults the ALJ for referencing other treatment notes, an ALJ may discredit a treating physician's opinion that is conclusory, brief and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Plaintiff does not cite to any evidence from other treating sources supporting Dr. Castro's limitations.

The Court recognizes that the ALJ also discounted Dr. Castro's opinion because she was a general practitioner, not a mental health specialist. AR 15. However, the fact that Plaintiff's treating physician was not a specialist is not a specific and legitimate reason for discounting that opinion. *See, e.g., Coelho v. Colvin*, 2014 WL 5107058 at *10 (N.D. Cal. Oct. 10, 2014) (fact that treating physician was not a specialist was not a specific or legitimate reason to assign no weight to the treating physician's opinion); *Prince .v Astrue*, 2012 WL 3133877, at *4 (C.D. Cal. Aug. 1, 2012) (treating physician's lack of certification in orthopedics did not on its own constitute a specific and legitimate reason for rejecting opinion). Nevertheless, the ALJ could properly afford weight to the opinion of a specialist, such as here, by according "great weight" to the opinion of Dr. Michiel, a board certified psychiatrist. AR16, 355-58. Generally, "more weight" is given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." *See* 20 C.F.R. § 404.1527 (c)(5).

For these reasons, the Court finds that the ALJ provided specific and legitimate reasons for discounting Dr. Castro's opinion of Plaintiff's mental limitations, and did not err.

Physical Limitations

On December 12, 2013, Dr. Castro also completed a Physical Medical Source Statement. Dr. Castro identified Plaintiff's diagnoses to include chronic mid and low back pain, diabetes mellitus, hypertension, and hypothyroidism. Dr. Castro noted that Plaintiff did get depressed due to her inability to do things. Dr. Castro opined that Plaintiff could walk approximately 2 blocks without rest or severe pain. She could sit two hours at a time and stand two hours at a time, and could sit about 2 hours in an 8-hour workday and stand/walk about 2 hours in an 8-hour workday. She would need a job that permitted shifting positions at will and periods of walking around during an 8–hour workday. Dr. Castro indicated that Plaintiff must walk for 10 minutes at time every 60 minutes, and would need to take unscheduled breaks every 20-30 minutes due to muscle weakness and chronic fatigue. Dr. Castro also indicated that Plaintiff must use a cane when engaging in occasional standing/walking due to imbalance and pain. Dr. Castro further opined that Plaintiff could lift less than 10 pounds and 10 pounds occasionally, could rarely lift 20 pounds and could never lift 50 pounds. She occasionally could climb stairs, rarely could twist or stoop and never could crouch/squat or climb ladders. Dr. Castro believed that Plaintiff would be off task 5% of an 8-hour workday, but was capable of low stress work. Dr. Castro estimated that Plaintiff likely would be absent about three days per month because of her impairments. AR 374-76.

The ALJ assigned "little weight" to Dr. Castro's assessment that Plaintiff had the capacity for less than the full range of sedentary work. AR 19. As with Dr. Castro's mental assessment, the ALJ provided specific and legitimate reasons for rejecting Dr. Castro's opinion regarding Plaintiff's physical capacity.

First, the ALJ discounted Dr. Castro's opinion because it was inconsistent with the treatment record. An ALJ properly may discount a treating physician's opinion that is in conflict with treatment records or unsupported by objective clinical findings. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ properly discounted treating physician's opinion based on discrepancy between assessed ability and physician's clinical notes); *Batson*, 359 F.3d at 1195; *Connett v. Barnhart*, 340

F.3d 871, 875 (9th Cir. 2003) (ALJ properly found that physician's extensive conclusions regarding claimant's limitations were not supported by his own treatment notes). Here, the ALJ appropriately found that Dr. Castro's treatment notes up to the date of her opinion in December 2013 did not contain objective findings supporting the assessed limitations. AR 19, 296-97, 405, 439, 444-46.

Plaintiff argues that the ALJ's analysis ignored Dr. Castro's examinations revealing tenderness and muscle spasms, along with objective x-ray evidence of degenerative changes in Plaintiff's lumbar spine and knees. Plaintiff's argument is unpersuasive. According to the treatment notes cited by Plaintiff, on May 7, 2012, she had normal range of motion in her neck and no musculoskeletal edema. AR 440. On August 11, 2012, she again had normal range of motion, but muscle spasm in her low back, along with bilateral crepitus and tenderness, and Dr. Castro ordered x-rays of the lumbar spine and knees. AR 406. However, x-rays of Plaintiff's lumbar spine completed on August 21, 2012, revealed only "degenerative changes with *mild* spondylolytic osteophyte formation at multiple levels and *mild* disc space narrowing at L3-L4, L4-L5 and L5-S1," and "grade 1 anterolistheses of L5 on S1, possibly related to facet joint arthropathy." AR 451 (emphasis added). Further, x-rays of Plaintiff's knees on August 21, 2012, showed only "*mild* lateral joint space narrowing" of the right knee and "*mild* degenerative joint disease with *mild* medial joint space narrowing" and a "[*s*]*uggestion* of a suprapatellar joint effusion." AR 452-53 (emphasis added). There are no findings in these records supporting the extreme limitations identified by Dr. Castro. Moreover, contrary to Plaintiff's argument, the ALJ expressly considered the x-ray findings when assigning weight to the opinions of Plaintiff's treating and examining physicians. To that end, the ALJ concluded that the mild degenerative changes noted in these x-rays were consistent with the opinion of Plaintiff's examining physician, Dr. Rustom Damania. AR 19-20.

The ALJ also found that the treatment notes accompanying Dr. Castro's physical assessment in December 2013 noted only musculoskeletal tenderness and an observation that Plaintiff moved slowly and used a cane. However, Plaintiff's lower extremity strength was 5/5, and there was only minimal limitation in abduction in the upper extremities. AR 19, 385. The ALJ also determined that nothing in these notes suggested that Plaintiff required a cane for ambulation. AR 19. The Court finds that the ALJ properly discounted Dr. Castro's December 2013 physical capacity assessment because it was in

conflict with and unsupported by the treatment records and clinical findings. *See Bayliss*, 427 F.3d at 1216.

As another reason for discounting Dr. Castro's opinion, the ALJ assigned greater weight to the findings of the examining physicians, Dr. Samuel Rush and Dr. Rustom Damania. AR 19-20. In May 2012, Dr. Rush, a board certified physician in internal medicine, examined Plaintiff and found no tenderness over the midline or paraspinal areas, and her flexion, extension and lateral bending and rotation were within normal limits. Her straight-leg raising was negative and she had normal range of motion bilaterally in her knee joints. She had no joint deformities, crepitus, effusion, tenderness or trigger points. Her motor strength was 5/5 in the upper and lower extremities bilaterally and she had normal muscle bulk and tone. Based on Plaintiff's history and the findings on physical examination, Dr. Rush opined that Plaintiff had no physical restrictions. AR 300-04.

In December 2012, Dr. Damania, also an internal medicine physician, examined Plaintiff and found that the range of motion of her neck was within normal limits. She had no tenderness to palpation in the midline or paraspinal areas of her back, straight-leg raising was negative, Laseque's sign was negative, there was no muscle spasm and her muscle tone appeared to be equal throughout. Flexion and extension of her knees was within normal limits and she had no crepitus or patellar instability. She also had 5/5 strength in all extremities and her gait was within normal limits. Dr. Damania concluded that Plaintiff should be able to lift and carry 50 pounds occasionally and 25 pounds frequently, could stand and walk six hours out of an eight-hour workday with normal breaks, could sit six hours and did not need an assistive device for ambulation. Dr. Damania also determined that Plaintiff did not have any postural, manipulative, visual or communicative limitations. AR 362-67.

Here, the ALJ reasonably gave weight to the independent findings of Drs. Rush and Damania. AR 19-20. When an examining physician provides "independent clinical findings that differ from the findings of the treating physician" such findings are "substantial evidence." *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985). In this instance, the ALJ assigned great weight to Dr. Damania's assessment because it was consistent with his independent clinical findings, and other

objective evidence in the record, including imaging showing mild degenerative changes in Plaintiff's knees and lumbar spine. AR 20, 451, 452-53.

Finally, the ALJ discounted Dr. Castro's opinion because it appeared to be based on Plaintiff's subjective complaints. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti,* 533 F.3d at 1041 (citation omitted). Dr. Castro's December 2013 opinion generally reflected Plaintiff's complaints, which, as discussed more fully below, the ALJ properly rejected as not credible.

For these reasons, the Court finds that the ALJ provided specific and legitimate reasons for rejecting Dr. Castro's physical assessment, and did not err.

## II. The ALJ Did Not Err in Rejecting the Opinion of Examining Physician, Dr. Zhang

Plaintiff next argues that the ALJ erred by failing to provide specific and legitimate reasons for rejecting the opinion of the consultative psychological examiner, Dr. J. Zhang.

### A. Legal Standard

Where an examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the examining physician's ultimate conclusions. *Lester*, 81 F.3d at 830. However, if the examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830–31. As with the opinion of a treating physician, the ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti*, 533 F.3d at 1041.

### B. The ALJ Provided Specific and Legitimate Reasons for Discounting Dr. Zhang's Opinion

Dr. Zhang conducted a consultative psychological evaluation of Plaintiff on May 1, 2012. AR 307-12. On mental status examination, Plaintiff's thought process was coherent and organized, her mood was depressed, her affect was intact, she was alert and oriented in all spheres, and she demonstrated adequate capacity to cooperate with the evaluation. Her intellectual functioning fell

1    within the below average range and her fund of general information was moderately limited. Her
2    attention and concentration were fair, needing occasional redirection to remain focused on the
3    evaluation. She also demonstrated moderately limited insight, but fair judgment. AR 308-09.

4    Dr. Zhang administered several tests, including the Wechsler Adult Intelligence Scale – IV, the
5    Wechsler Memory Scale – IV, and the Bender-Gestalt II. AR 309-311. Dr. Zhang diagnosed Plaintiff
6    with depressive disorder, NOS, and opined that she showed moderate depression with her medical
7    problems with a fair prognosis. AR 311. Dr. Zhang opined that Plaintiff had no limitations in the
8    ability to understand, remember and carry out simple one or two-step instructions, moderate
9    limitations in the ability to understand, remember, and carry out complex instructions, moderate
10   limitations in the ability to relate and interact appropriately with the public, coworkers, and
11   supervisors, marked limitations in the ability to maintain adequate concentration, persistence and pace,
12   marked limitations in the ability associated with common work activity including attendance and
13   safety, no limitations in the ability to accept instructions from supervisors, marked limitations in the
14   ability to maintain regular attendance and perform work activities consistently, moderate limitations in
15   the ability to perform work activities without special or additional supervision and no limitations in the
16   ability to manage money on her own behalf. AR 311-12.

17   The ALJ assigned "little weight" to Dr. Zhang's opinion that Plaintiff had marked limitation in
18   maintaining adequate concentration, persistence, and pace, maintaining regular attendance, and
19   maintaining work attendance and safety, and moderate limitation of ability to interact with others and
20   perform work activities without special supervision. AR 16. In so doing, the ALJ discounted Dr.
21   Zhang's opinion because it was contradicted by the later medical opinion of Dr. Ekram Michiel, a
22   board certified psychiatrist. Generally, the "most recent medical reports are highly probative" where a
23   condition has changed. *See, e.g.*, *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). Dr.
24   Michiel evaluated Plaintiff on December 28, 2012, and found that she was oriented to person, place
25   and date, she was able to do digit span five out of five forward and backwards correctly, she was able
26   to recall three out of three items after five minutes and could do simple math problems. Her affect was
27   broad and appropriate and her thought process was goal directed. Her recent memory was intact and
28   her remote memory did not show any impairment. Her insight and judgment were intact, but her fund

of knowledge was below average. Dr. Michiel diagnosed Plaintiff with an adjustment disorder unspecified, but concluded that Plaintiff was able to maintain attention and concentration to carry out simple job instructions and could relate and interact with coworkers, supervisors and the general public. Dr. Michiel also concluded that Plaintiff was unable to carry out an extensive variety of technical and/or complex instructions, but she had no restrictions on activities of daily living and was able to handle her own funds. AR 355-58.

The ALJ accorded Dr. Michiel's opinion great weight, because it was supported by, and consistent with, his clinical findings and also was consistent with other medical source opinions. AR 16. The ALJ has the discretion to weigh the value of the different medical opinions, resolve conflicts in the evidence, and determine which opinions to reject or accept. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). And, generally, the more consistent an opinion is with the record as a whole, the more weight will be given to that opinion. *See* 20 C.F.R. § 404.1527(c)(4). Here, the ALJ properly found that Dr. Michiel's opinion was consistent with a finding that Plaintiff only had deficits in her fund of knowledge. Dr. Michiel's opinion also was consistent with Plaintiff's treatment records, as discussed, and consistent with the opinions of the state agency consultant, Dr. Amado. AR 16.

For these reasons, the Court finds that the ALJ provided specific and legitimate reasons for rejecting Dr. Zhang's assessment, and did not err.

### III. The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff argues that the ALJ erred by impermissibly dismissing Plaintiff's pain testimony. Specifically, Plaintiff contends that the ALJ's conclusions regarding gaps in Plaintiff's medical treatment and inconsistent testimony were not sufficient. (Doc. 14 at 15-16.)

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings and provides clear and convincing reasons for doing so. *Id.* The ALJ must "state

which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter,* 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence."). Factors an ALJ may consider include: (1) the claimant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

At the first step of the analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." AR 20. At the second step, however, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. In so finding, the ALJ provided clear and convincing reasons for finding Plaintiff not fully credible. AR 20-21.

First, the ALJ found that Plaintiff had "not received the treatment that one would expect, given her report of disabling physical pain symptoms." AR 20. In particular, the ALJ cited gaps in Plaintiff's medical treatment between June 26, 2008, and August 20, 2010, and between August 29, 2012 and December 12, 2013, and concluded that the lack of medical treatment during these extended periods was "not consistent with allegations of disabling limitations and symptoms, suggesting that her symptoms were not severe enough to warrant treatment." AR 21. "[I]f a claimant complains about disabling pain but fails to seek treatment . . . an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Smolen*, 80 F.3d at 1284.

Plaintiff contends that the ALJ's analysis is faulty because Plaintiff testified as to her lack of medical insurance and funds to obtain treatment. (Doc. 14 at 16). Plaintiff is correct that "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment [s]he cannot obtain for lack of funds." *Orn*, 495 F.3d at 638 (citation omitted). However, Plaintiff testified that she lost her health insurance in October or November of 2012. AR 37. As a result, there is nothing in the record to suggest that Plaintiff was unable to afford treatment during the period between June 26, 2008, and

17

August 20, 2010, or between August 29, 2012 and October or November 2012. Accordingly, it was not error for the ALJ to consider gaps in Plaintiff's treatment to discount her credibility.

Next, the ALJ discounted Plaintiff's credibility because of inconsistencies in Plaintiff's allegations and testimony. AR 21. An ALJ properly may consider a Plaintiff's inconsistent testimony and allegations when evaluating credibility. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ may consider claimant's inconsistent testimony in evaluating credibility); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony.") (citation omitted). Here, the ALJ correctly noted Plaintiff's allegation that she became disabled and unable to work on April 10, 2008, was inconsistent with treatment notes from June 2008 in which Plaintiff reported giving two weeks' notice, presumably to her employer, and that she wanted to go to school. AR 296. The ALJ next noted Plaintiff's testimony that she required a cane most of the time was inconsistent with the opinions of the consultative examiners, who did not opine that a cane was necessary for ambulation. AR 300-04, 362-67.

Plaintiff's cane testimony also was inconsistent with the ALJ's observation that Plaintiff did not bring a cane to the hearing. An ALJ may rely on personal observations of the claimant at the administrative hearing as part of the credibility analysis. *See*, *e.g.*, *Thomas*, 278 F.3d at 960 (ALJ properly relied in part on claimant's demeanor at hearing); *Drouin v. Sullivan*, 966 F.2d 1255, 1258-59 (9th Cir. 1992) (ALJ's personal observations at hearing one permissible factor taken into consideration in rejecting claimant's testimony).

The ALJ also considered Plaintiff's testimony that she used a cane while working as a nursing assistant was not convincing because Plaintiff could not describe how she performed tasks involving bathing and feeding patients, providing personal care, and cleaning rooms while holding a cane. AR 21. Further, the ALJ noted that in her April 2012 function report, Plaintiff indicated that she only used a cane "at times" on long walks, and did not mention using the cane all the time or while working. AR 21, 261.

Additionally, the ALJ determined that Plaintiff's description of her activities at the hearing was not persuasive because of previously reported activities. AR 21. In addition to considering the inconsistency, the ALJ properly could consider Plaintiff's daily activities in assessing her credibility. *See Lingenfelter*, 504 F.3d at 1040. In Plaintiff's function report, she reported cleaning and doing laundry, continuing to drive and shopping alone. She also reported that she could lift up to 25 pounds without discomfort. AR 21, 257-58, 260.

For these reasons, the Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's credibility, which were supported by substantial evidence in the record.

### IV. The ALJ Properly Discounted the Lay Testimony

Plaintiff argues that the ALJ erred by discounting the lay testimony of Plaintiff's son and her fiancé as unsupported by the medical record. (Doc. 14 at 17-19).

An ALJ must take into account competent lay witness testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "[I]n order to discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'" *Molina*, 674 F.3d at 1114 (citation omitted).

Here, the ALJ considered the third-party statements of both Plaintiff's son and her fiancé, and discounted these statements because they were "not consistent with the medical evidence of record, or most of the medical source opinions noted . . . ." AR 20. Plaintiff correctly asserts that the ALJ erred by discounting the third-party statements as unsupported by the medical record. The fact that medical records do not corroborate the testimony of a lay witness is not a proper basis to reject such testimony. *See Smolen*, 80 F.3d at 1289. Nonetheless, the Court finds this error harmless because the ALJ also determined that the third-party statements essentially reaffirmed "the description of limitations that the claimant provided in her Function report and at the hearing." AR 20. Where, as here, the ALJ gives valid reasons for rejecting the claimant's testimony, this is sufficient to support a finding that the lay witness testimony also is not credible. *Molina*, 674 F.3d at 1122 (if ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness); *Price v. Comm'r of Soc. Sec.*, 2017 WL 735732, at *12-3 (E.D. Cal. Feb. 24, 2017) ("If the ALJ gives reasons for rejecting the claimant's testimony that are equally

relevant to similar testimony provided by lay witnesses, that would support a finding that the lay witness testimony is similarly not credible.").

For this reason, the Court finds that the ALJ did not err in evaluating the lay witness testimony.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Terrie Lopez Ross.

IT IS SO ORDERED.

Dated: **March 17, 2017**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE